

United States District Court
Southern District of Texas
**ENTERED**
January 14, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| CARLOS NOE MENDOZA<br>"Petitioner," | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 1:25-cv-00253 |
| MIGUEL VERGARA, *et al.*,<br>"Respondents." | §<br>§<br>§ | |

## ORDER

Before the Court are Petitioner's "Emergency Motion for a Temporary Restraining Order" (Dkt. No. 2) ("TRO"), "Respondents' Response to Petitioner's Writ of Habeas Corpus and Motion for Summary Judgment" (Dkt. No. 6) ("MSJ"), and "Petitioner's Response in Opposition to Respondents' Motion for Summary Judgment" (Dkt. No. 7) ("Reply"). For these reasons, Petitioner's TRO (Dkt. No. 2) is **GRANTED in part.**

### I.   BACKGROUND

Petitioner is a citizen and native of El Salvador. Dkt. No. 6 at 2. On March 6, 2007, an Immigration Judge ("IJ") ordered his removal from the United States. *Id.* Despite this order, Petitioner was again encountered and detained in the United States in December 2021. *Id.*

On January 5, 2023, an IJ granted Petitioner withholding of removal to El Salvador under the Convention Against Torture ("CAT"). *Id.* This form of withholding shields a noncitizen from being removed to a country if the noncitizen demonstrates that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16. With Petitioner ineligible for removal to El Salvador, Enforcement and Removal Operations ("ERO") initiated the search for a third country willing to accept Petitioner. Dkt. No. 6 at 2. Petitioner was initially detained during this process, but when ERO proved unable to locate a viable third country, Petitioner was released on February 28, 2023, under an Order of Supervision ("OSUP"). *Id.*

On October 27, 2025, Petitioner was arrested for driving while intoxicated. *Id.* Shortly thereafter, he was transferred to Immigration and Customs Enforcement's ("ICE") custody and

1

served with revocation of his OSUP. *Id.* at 2-3. On October 31, 2025, Petitioner was served with Notice of Third Country Removal to Mexico. *Id.* at 3. He is currently detained at the Port Isabel Service Processing Center. Dkt. No. 2 at 1.

Petitioner filed the underlying Petition for Writ of Habeas Corpus (Dkt. No. 1) and TRO on November 7, 2025, both of which contend that the removal of a noncitizen to a third country without an opportunity to challenge that removal violates Petitioner's due process rights. Dkt. No. 1 at 4; Dkt. No. 2 at 2. Petitioner requests an order "that he may not be removed to a Third Country without having the opportunity to challenge such removal." Dkt. No. 2 at 2.

## II.  LEGAL STANDARD

A court may issue a temporary restraining order if the movant demonstrates: (1) a substantial likelihood of success on the merits; (2) a substantial threat of immediate and irreparable harm; (3) that the balance of hardships weighs in the movant's favor; and (4) that the temporary restraining order will not disserve the public interest. *Daniels Health Scis., L.L.C. v. Vascular Health Scis., L.L.C.*, 710 F.3d 579, 582 (5th Cir. 2013).

## III.  DISCUSSION

28 U.S.C. § 2241 gives district courts the power to issue writs of habeas corpus to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). This authority is derived from 8 U.S.C. § 1252(g) to "protect the discretionary decisions of immigration authorities in matters related to removal and deportation." *Duarte v. Mayorkas*, 27 F.4th 1044, 1055 (5th Cir. 2022. But § 1252(g)'s contours are narrowly drawn. *Reno v. Am.–Arab Anti–Discrimination Comm.*, 525 U.S. 471, 482-83 (1999). Thus, so long as Petitioner challenges the post-removal process he's been afforded, and not any discretionary act about "whether and when" to remove him, the Court finds that it has subject matter jurisdiction over the relief sought. *Duarte*, 27 F.4th at 1055; *see also Flores-Ledezma v. Gonzales*, 415 F.3d 375, 380 (5th Cir. 2005) (holding that § 1252(g) did not prohibit a challenge to the constitutionality of a statutory scheme).[1]

---

[1] Courts have jurisdiction to determine their jurisdiction. *U.S. v. Ruiz*, 536 U.S. 622, 628 (2002); *see also ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 n.19 (5th Cir. 1978) ("When potential jurisdiction exists, a federal court may issue status quo orders to ensure that once its jurisdiction is shown to exist, the court will be in a position to

2

A. **PETITIONER ESTABLISHES A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.**

Based on the filings currently before the Court, the Court finds Petitioner is likely to prevail on the merits.

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). A *sin qua non* of due process is notice and an opportunity to be heard "at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citations omitted). It is "well established" that such rights extend to noncitizens, particularly "in the context of removal proceedings." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1006 (2025) (quoting *Reno v. Flores*, 507 U.S. 292, 306 (1993)) (citation modified).

Here, the question is how much process is due. In making this determination, courts must consider "(1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards." *Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (citing *Mathews*, 424 U.S. at 335). The Court finds each *Mathews* factor tilts in Petitioner's favor.

First, Petitioner has a private interest in not being removed to a country where he fears persecution, torture, or chain deportation to El Salvador. Second, the current Department of Homeland Security ("DHS") policy on third country removal presents a high risk of erroneous deprivation. *See generally* Dkt. No. 6-4. True, the policy instructs immigration officials to give noncitizens the opportunity to establish fear of removal to the designated third country before a U.S. Citizenship and Immigration Services ("USCIS") officer. Dkt. No. 6-4 at 2. But if the USCIS officer determines that the noncitizen fails to show they "would more likely than not be persecuted on a statutorily protected ground or tortured in the country of removal[,]" the process ends there. *Id.* Without IJ review of this determination, the risk for erroneous deprivation is great. And a threshold screening falls short of adequate process against the high stakes. This is so even

---

exercise it."). If Petitioner's challenge implicates the § 1252(g) jurisdictional bar, this Temporary Restraining Order helps preserve the status quo until the issue can be properly decided.

for those entitled to lesser due process protection than Petitioner. *See Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103, 107 (2020) (acknowledging that "aliens who have established connections in this country" have greater due process rights than "an alien at the threshold of initial entry."). To provide IJ review of USCIS threshold fear interviews to those entitled to less process than Petitioner highlights the significance of the safeguard. Viewed against this significance, the burden of imposing it appears *de minimis*. IJ review of a reasonable fear interview occurs in virtually all other removal contexts, including those where noncitizens are entitled to lesser due process rights. *See e.g.*, 8 C.F.R. § 1208.31(g); 8 C.F.R. § 1240.1(a)(1)(iii); 8 C.F.R. § 1003.42.

Third, "there is a public interest in preventing aliens from being wrongfully removed, particularly to countries where they are likely to face substantial harm." *Nken v. Holder*, 556 U.S. 418, 436 (2009). Just as significant is the countervailing government interest in the prompt execution of removals. *Id.* But where existing regulations provide for IJ review within ten days of a negative fear determination, *see, e.g.*, 8 C.F.R. § 1208.31(g), the use of this additional safeguard is unlikely to stymie the Government's ability to carry out this interest.

### B. THE REMAINING FACTORS SIMILARLY FAVOR PETITIONER.

Other factors similarly counsel in favor of granting Petitioner relief. Petitioner stands to suffer irreparable harm in the form of persecution and torture. Moreover, the current DHS policy does not protect against the risk of chain deportation: removal by the third country (here, Mexico) to the country of origin from which the individual won protection in the United States (El Salvador). Dkt. No. 2 at 1; *see Nunez v. Boldin*, 537 F. Supp. 578, 587 (S.D. Tex. 1982) ("Deportation to a country where one's life would be threatened obviously would result in irreparable injury."). Finally, the balance of equities and public interest also favor Petitioner. Because this Court has found that Petitioner's removal to Mexico would likely violate due process, enjoining Respondents from removing him without proper process serves the public interest. And, as explained above, the Court finds Respondents can plausibly maintain the status quo with minimal disruption.

The Court thus finds that Petitioner's TRO makes a showing sufficient to justify preserving the status quo for a deeper inquiry.

## IV.   CONCLUSION

For these reasons, Petitioner's TRO (Dkt. No. 2) is **GRANTED in part.** It is therefore **ORDERED** that Respondents are enjoined from transferring, relocating, or removing Petitioner to Mexico or any other country for which Petitioner has stated a fear of being removed. This Temporary Restraining Order shall expire at **5:00 p.m. CST on Wednesday, January 28, 2026**, or by Order of the Court. Petitioner's TRO is **DENIED in part** with respect to any other requested relief.

The parties are further **ORDERED** to submit supplemental briefing on (1) whether Petitioner's continued detention is lawful under 28 U.S.C. § 2241 and (2) what bearing, if any, the class action certification in *D.V.D. v. U.S. Dep't of Homeland Sec.*, 778 F. Supp. 3d 355 (D. Mass. 2025), has on this Court's ability to grant Petitioner's individual claims for relief. The parties must submit these briefings **no later than Friday, January 23, 2026.**

Signed on this 14th day of January 2026.

_____
Rolando Olvera
United States District Judge